[Civ. No. 29463.    Second Dist., Div. One.    Mar. 27, 1967.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; H. EDWARD SCOFIELD et al., Real Parties in Interest.

[Crim. No. 11449.    Second Dist., Div. One.    Mar. 27, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. H. EDWARD SCOFIELD et al., Defendants and Respondents.

(Consolidated Cases.)

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Petitioner in Civ. No. 29463 and for Plaintiff and Appellant in Crim. No. 11449.

H. Edward Scofield and Gertrude Ross, in pro per., Gladys Towles Root, Harry B. Seelig, Charles Weedman, Paul Caruso and Morris Lavene for Real Parties in Interest in Civ. No. 29463 and for Defendants and Respondents in Crim No. 11449.

No appearance for Respondent in Civ. No. 29463.

FOURT, J.—This is an appeal from an order granting a motion to set aside an indictment pursuant to section 995, Penal Code. There is also herewith for determination a petition for a writ of certiorari and/or mandamus filed by the People and to be considered in the event this court should decide that the order setting aside the indictment is nonappealable. (Civ. No. 29463.) The two matters are consolidated for disposition.

On June 13, 1963, three search warrants were issued out of the Municipal Court of the Santa Monica Judicial District authorizing the search of the premises of H. Edward Scofield and Doctor Everett W. DeLong. On June 20, 1963, two additional search warrants were issued authorizing the search of the premises of H. Edward Scofield, but authorizing a search for property other than that specified in the search warrants of June 13, 1963.

On November 21, 1963, an indictment was returned in the

Superior Court in Los Angeles County (case No. 279,965) charging the named appellants herein and others with a conspiracy (Pen. Code, § 182) to violate sections 556, subdivision (a), and 556, subdivision (b), of the Insurance Code (with 23 separate overt acts recited) plus 28 separate substantive counts of violations of the law with reference to the submission of false insurance claims to insurance companies by claimants in conjunction with their attorney Scofield and their doctors, Doctor DeLong and Doctor John W. Perry.

Between April 8, 1964, and April 21, 1964, motions to quash the search warrants and for the return of property seized were filed in the Municipal Court of the Santa Monica Judicial District by Scofield, DeLong, Speer, Batteiger, Ross and Nelson (sometimes hereinafter referred to as the persons last above named or as the persons above named). A hearing was had on April 21, 1964, with reference to such motions and each of the persons above named was given the opportunity to introduce evidence and did, in fact, produce some witnesses. On April 30, 1964, Judge Baida of the last named court denied the motions to quash the search warrants upon the grounds that the court lacked jurisdiction, and that there was a waiver of any right to relief under Penal Code, sections 1539 and 1540, by reason of the delay in the filing of the application.

On May 7, 1964, a petition for a writ of mandate (civil case No. C838,284) was filed in the superior court by the persons last above named plus Pamela Jayson and Evelyn Phillips, seeking a review of the Judge Baida orders and proceeding and for an order commanding the Municipal Court of the Santa Monica Judicial District to grant the motion to quash the search warrants and for a return of the property allegedly illegally seized under the allegedly invalid search warrants. It was urged in writing and orally that the warrants should be quashed because they allegedly resulted in the seizure of evidence in violation of the Constitutions of California and of the United States. At no time during the proceeding in Judge Baida's court, or during the proceedings in the superior court in case numbered C838,284 did the persons named above, or any of them, claim or urge that Judge Baida had no jurisdiction to issue the warrants in the first place.

The People, in writing and orally, opposed the petition for the writ of mandate and after extensive hearings held by Judge Wapner on May 11, 1964, July 9, 1964, and July 10,

1964, findings of fact and conclusions of law[1] and a judgment denying the petition for the writ of mandate were signed on August 3, 1964, by Judge Wapner.

---

[1] The substance of the findings of fact and conclusions of law is that on June 13, 1963, three search warrants were issued by Hector P. Baida, Judge of the Municipal Court of the Santa Monica Judicial District. True copies of the three warrants were attached to the petition for mandate. Affidavits (copies of which were attached to the mandate petition) supporting the warrants were submitted to and considered by Judge Baida. On June 20, 1963, two search warrants (copies of which were attached to the mandate petition) were issued by Judge Baida. Affidavits (copies of which were attached to the petition) supporting these warrants were submitted to and considered by Judge Baida. The property which was to be searched for under the warrants of June 20, 1963, was not identical to the property which was to be searched for under the previous warrants. The warrants issued on June 13, 1963, related to ''medical records and charts reflecting the treatment by Dr. Everett W. DeLong of'' certain named persons; whereas, the warrants of June 20, 1963 related to ''documents, memoranda, records and charts reflecting insurance claims prepared and handled by Edward Scofield on behalf of'' these named persons, plus Mary DuBois. Everett W. DeLong is a doctor and Edward Scofield is an attorney at law. Copies of the returns to the search warrants are attached to the mandate petition.

Each of the affidavits contains statements which indicate that claims were submitted to insurance companies on behalf of each of the persons whose records were to be seized, that such claims were false at least in part. That there is a supportable inference that each of Scofield's clients whose records were to be seized sought his assistance either to knowingly perpetrate a crime or were innocent dupes whose claims were used by Scofield and DeLong to perpetrate crimes.

There was probable cause for the issuance of the warrants and there was probable cause to believe that the evidence sought by the warrants was located at each of the premises described in each of the warrants.

After receiving information in November, 1962, that Doctor DeLong, in collaboration with Scofield, knowingly submitted fraudulent medical bills to insurance companies, the person who signed each of the affidavits in support of the search warrants conducted an investigation which corroborated the information that affiant had received. The investigation was conducted between November 1962, and June 13, 1963. It was reasonable for Judge Baida to conclude that the records sought by the warrants were still on the premises of Doctor DeLong and Scofield.

On November 21, 1963, each of petitioners, plus other persons, was indicted by the grand jury for submitting false insurance claims to various insurance companies. On December 20, 1963, each of petitioners appeared in court with counsel, although not counsel presently representing petitioners.

Between April 8, 1964, and April 21, 1964, Scofield, DeLong, Speer, Batteiger, Ross and Nelson presented motions to the Municipal Court of the Santa Monica Judicial District to quash the search warrants. The matter came on for hearing on April 21, 1964, before Judge Baida. Counsel for the above named petitioners appeared, but no appearance was made in behalf of Pamela Jayson and Evelyn Phillips. A reporter's transcript of the Tuesday, April 21st, 1964, hearing in the municipal court was filed in the instant matter. Neither Jayson or Phillips, at any time, attacked the validity of the search warrants in the municipal court. At the hearing before Judge Baida on April 21st, 1964, none of the petitioners attempted to go behind the face of the search warrants, the face of the five affidavits or the face of the returns to the search warrants. At the hearing, petitioners attempted to attack the search warrants and the

The persons heretofore named sought to have Judge Wapner's decision reviewed by a mandate proceeding or prohibition or supersedeas proceeding in the District Court of Appeal (2d Civ. 28400). The petition was denied in this court on August 27, 1964. A hearing was sought in the Supreme Court which was denied on September 24, 1964. On November 30, 1964, the persons heretofore named filed a notice of motion to vacate the judgment of August 3, 1964, and the same was denied on December 23, 1964. The findings of fact, conclusions of law and judgment have never been vacated or set aside, nor did the persons heretofore named ever file a notice of appeal in case numbered C838,284.

On April 30, 1965, Scofield filed a document titled "Notice of Motion to Suppress the Evidence and to Dismiss the Indictment." In this document it is sought to put into issue prior to the trial the validity of the search warrants ruled upon by Judge Wapner. A hearing was had on this motion on May 10, 1965, at which time all the persons heretofore named, excepting Speer, Holmberg and Phillips, joined in Scofield's

accompanying documents on their face and did not attempt to controvert any of the allegations contained in the affidavits, even though the person who signed such was in court at the hearing. All of the allegations contained in each of the affidavits with reference to the warrants was found to be true and correct for the purposes of the proceeding. None of the testimony presented by petitioners controverted anything appearing on the face of the warrants, the face of the affidavits or the face of the returns.

On April 30, 1964, Judge Baida denied the motions to quash upon the grounds of lack of jurisdiction and waiver of right to apply for relief under sections 1539 and 1540 of the Penal Code by reason of the delay in filing the application.

On May 8, 1964, the petition for mandate was filed and hearings held on May 11th, July 9th and July 10th, 1964. At each of the hearings an appearance was made by counsel for each of petitioners except Jayson and Phillips.

Conclusions of law: (1) that the court below correctly concluded that there was probable cause to issue each of the warrants for the property and places described in each of the warrants, and (2) that the affidavits upon which the warrants were issued were based upon information which was not stale at the time the warrants were issued. There was probable cause to believe that the evidence sought by the warrants was located at each of the premises described in each of the warrants. The person who signed each of the affidavits acted timely in requesting the issuance of the search warrants. The evidence sought by means of each of the warrants was sufficiently described. There is no evidence that any of the items sought was not subject to seizure because of any privileged relationship; there is nothing on the face of the returns which would indicate that any items were seized which should not have been seized or that the returns themselves were defective.

A judgment was made on August 3, 1964, and entered on August 12, 1964, discharging the alternative writ of mandate and the peremptory writ of mandate was denied.

motion. At that hearing the judge had before him the entire file in superior court civil case numbered C838,284, and the proceeding in this court's case numbered Civ. No. 28400. The People took the position that the court lacked jurisdiction to reconsider the matter which had been litigated and concluded by the judgment which had become final.

During the hearing on May 10, 1965, Judge Lawler granted the motion to suppress the evidence obtained as a result of the searches based on the search warrants issued by Judge Baida and in a continued hearing on May 12th, 1965, Judge Lawler stated that he had granted the motion to suppress because "the affidavits in support of the request for the issuance of the search warrants were replete with legal conclusions and were not sufficient to justify the issuance of the search warrants." This in spite of the findings of Judge Wapner and the judgment previously made and entered. Another reason given by Judge Lawler in effect was that items had been seized which should not have been seized. This, also, in spite of the finding and judgment of Judge Wapner to the contrary. The third reason given by Judge Lawler for his ruling was that "a Magistrate . . . in one district does not have the authority to order the search of homes or dwellings or any property in another district, particularly when there is nothing to indicate that there's any triable issues [*sic*] before him or no alleged crime over which he would have jurisdiction to try." The last mentioned issue had never been raised by any of the persons heretofore named. On May 12, 1965, the court indicated that the motion before the court on May 10th and before the court on May 12th, 1965, was deemed to be one motion under Penal Code, section 995. In other words, that the proceedings of the 10th and the 12th of May, 1965, were one proceeding under Penal Code, section 995, and that the initial ruling of May 10th had to be made before he could rule under Penal Code, section 995. The judge then concluded the hearing by reconsidering the previous ruling under Penal Code, section 995, and set aside the indictment solely on the basis that unlawfully obtained evidence had been offered and received by the grand jury. Prior to May 12, 1965, another judge of the superior court had denied defendants' motions under Penal Code, section 995.

The People filed a notice of appeal with respect to the persons heretofore named insofar as those persons were named as defendants in counts I, IV, V, VI, XI, XII and XVII. No notice of appeal has been filed with reference to the Judge

Lawler ruling as to any defendant who was not a party to the proceedings before Judge Wapner.

We are persuaded that although Judge Lawler in this case, as a preliminary matter, ruled to suppress the evidence, such was part and parcel of the proceedings under section 995, Penal Code, and was considered and treated by the trial judge as part of one proceeding, and is, as a consequence, reviewable on appeal from the granting of the motion under section 995, Penal Code.

In *People* v. *Keener,* 55 Cal.2d 714 [12 Cal.Rptr. 859, 361 P.2d 587], the defendants made a motion to quash the search warrants and a hearing was held. At the hearing the defendants requested the name of the informant whose information had led to the issuance of the search warrant. The request was denied. Thereafter a preliminary hearing was had and during that hearing no request for the disclosure of the identity of the informant was made. The magistrate bound the defendants over to the superior court. A motion under Penal Code, section 995, was made to set aside the information upon the ground that there was no probable cause for the search and evidence obtained thereby was illegally obtained. The motion was granted. The Supreme Court reversed, holding that the failure to disclose the informant did not render inadmissible the evidence found as a result of the search. It is to be noted that the failure to disclose took place during the proceedings not normally reviewable under Penal Code, section 995 (proceedings under Pen. Code, §§ 1539, 1540).

It would appear reasonable that if the separate proceedings in *Keener, supra,* were reviewable on appeal when the defendants made their motion under section 995, then the motion to suppress proceedings are reviewable on appeal in this case as a part of the section 995 proceedings.

In *People* v. *Justice Court,* 185 Cal.App.2d 256 [8 Cal.Rptr. 176] and in *Gershenhorn* v. *Superior Court,* 227 Cal.App.2d 361, 367-368 [38 Cal.Rptr. 576], the motion to suppress was considered in and by itself as a separate proceeding, which is not the situation in the case at bench. Fundamentally, Judge Lawler committed the same procedural error which was committed by the superior court in *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 454-455 [20 Cal.Rptr. 321, 369 P.2d 937]. Paraphrasing *Auto Equity Sales, Inc., supra,* under the doctrine of res judicata, all tribunals exercising inferior or concurrent jurisdiction are required to follow judg-

ments of courts exercising superior or concurrent jurisdiction. Otherwise, the doctrine of res judicata makes no sense.

The decision of Judge Wapner was binding upon a judge of the superior court until such time as that judgment is overturned. (*See People* v. *Superior Court,* 202 Cal.App.2d 850 [21 Cal.Rptr. 178], 3 Witkin, Cal. Procedure (1954), Extraordinary Writs, § 78, pp. 2577-2579.)

If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of law. To affirm the action taken in this case would lead directly to forum shopping, since if one judge should deny relief, defendants would try another and another judge until finally they found one who would grant what they were seeking. Such a procedure would instantly breed lack of confidence in the integrity of the courts.

Basically what the defendants were permitted to do by Judge Lawler's order was to overturn collaterally a ruling on an issue with reference to the lawfulness of a search and seizure.

The judgment of Judge Wapner was binding upon and should have been followed by the superior court until such time as that judgment was overturned.

In *In re Sterling,* 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5], the court held that habeas corpus was not available to challenge the use of evidence obtained by an allegedly unconstitutional search and seizure. The court stated at page 488: ". . . in the absence of extraordinary circumstances, the time and place to secure such an adjudication is at the trial and on appeal. Unless these direct remedies were inadequate for reasons for which the defendant was not responsible (see *In re Spencer* (1965) *ante,* pp. 400, 406 [46 Cal.Rptr. 753, 406 P.2d 33]), we see no basis for affording him an opportunity to relitigate an alleged violation of such constitutional rights by collateral attack in the state courts."

The reasons spoken of by the court for refusing the collateral attack included the need to avoid "needless repetition and delay" and to avoid "the abandonment of procedures vital to the orderly administration of justice by the state courts." (*In re Sterling, supra,* p. 489.) In the case presently before this court a legitimate interest is served, "needless repetition and delay" is prevented, and "orderly administration of justice" is preserved by precluding petitioner from relitigating an issue already decided by a final judgment in a court of concurrent jurisdiction. Here it appears at least that petitioners deliberately sought to bypass orderly procedures for

they did not appeal from the Judge Wapner judgment. The time for appeal from that judgment had expired at the time Judge Lawler made his order from which the People now appeal.

There was, it may be noted, no new rule of law made by any intervening decision which would have been favorable to petitioners in the proceedings before Judge Wapner.

The petitioners here were afforded a full opportunity to litigate the issue at hand in the proceeding before Judge Wapner; indeed, they instituted the proceeding and sought the determination, they had every procedural safeguard extended to them, they had every motive to make a vigorous and effective presentation in their behalf. We are not confronted with a situation where the petitioners or defendants were unaware of the issues to be disposed of. It is not a situation where they might have but did not litigate, or where they were prohibited from litigating the questions involved. There were no procedural quirks in the Judge Wapner proceedings which prevented a judgment on the merits. As heretofore stated, no appeal was taken from that judgment.

We are persuaded that the principles of res judicata apply in criminal matters to bar a redetermination of identical issues decided in a prior proceeding instituted by the same parties. Once the prosecutor has convinced a trier of fact to find a certain fact (and that determination becomes final), he should not have the burden of proving again and again that same fact in court after court.

When a judge of a particular judicial district acts in the capacity of a magistrate, he does not do so as a judge of a particular court but rather as one who derives his powers from the provisions of Penal Code, sections 807 and 808. (See *People* v. *Newton*, 222 Cal.App.2d 187, 189 [34 Cal.Rptr. 888].) By initiating proceedings before magistrates, no trial jurisdiction of any court is invoked. Clearly the court was in error in the proceeding here in the statements made with reference to the limited jurisdiction of the magistrate.

A review of the evidence before the grand jury amply supports the indictment of each of the defendants (with the exception of Nelson) as to each of the counts from which the People have appealed. Judge Lawler expressed himself "that there was ample evidence presented to the Grand Jury to justify the return of the indictment, and were it not for the illegally obtained evidence the motion would be denied."

In any event, it is clear too that there was sufficient evidence independent of that from the searches and seizures to sustain the counts with which we are concerned.

Admittedly, however, there was not sufficient competent evidence, in any event, presented to warrant ''a strong suspicion in the mind of a man of ordinary caution or prudence'' that defendant Nelson was guilty as charged.

The order appealed from is reversed as to defendants H. Edward Scofield, Everett W. DeLong, Joseph R. Batteiger, Anita Speer and Gertrude Ross.

The order is affirmed as to defendant Freda Mae Nelson.

Having made the determinations as above indicated for the reasons stated, the petition of the People for writ of certiorari and/or mandamus in our case numbered 29463 is denied.

Wood, P. J., and Lillie, J., concurred.

The petition of real parties in interest and respondents Scofield, Batteiger and Ross for a hearing by the Supreme Court was denied May 24, 1967.